**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | **Case No. 23-32488** |
| | § | |
| **De La Reina Developments Corporation,** | § | **(Chapter 11)** |
| | § | |
| Debtor. | § | **Judge Jeffrey P. Norman** |

**DEBTOR'S DISCLOSURE STATEMENT WITH RESPECT TO
PLAN OF REORGANIZATION UNDER
CHAPTER 11 OF THE BANKRUPTCY CODE
FOR DE LA REINA DEVELOPMENTS CORPORATION**

THIS DISCLOSURE STATEMENT IS SUBMITTED TO ALL CREDITORS OF THE DEBTOR ENTITLED TO VOTE ON THE PLAN OF REORGANIZATION HEREIN DESCRIBED AND CONTAINS INFORMATION THAT MAY AFFECT YOUR DECISION TO ACCEPT OR REJECT THE DEBTOR'S PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE. THIS DISCLOSURE STATEMENT IS INTENDED TO PROVIDE ADEQUATE INFORMATION AS REQUIRED BY THE BANKRUPTCY CODE AS TO THE DEBTOR'S PLAN OF REORGANIZATION. ALL CREDITORS ARE URGED TO READ THE DISCLOSURE STATEMENT AND ATTACHMENTS WITH CARE AND IN THEIR ENTIRETY.

ON _____ 2023, THE BANKRUPTCY COURT APPROVED THIS DISCLOSURE STATEMENT AS CONTAINING ADEQUATE INFORMATION UNDER § 1125(b) OF THE BANKRUPTCY CODE. SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN OF REORGANIZATION HEREIN DESCRIBED AND ATTACHED AS EXHIBIT A, IS BEING SOUGHT FROM CREDITORS WHOSE CLAIMS AGAINST THE DEBTOR ARE IMPAIRED UNDER THE PLAN OF REORGANIZATION. CREDITORS ENTITLED TO VOTE ON THE PLAN OF REORGANIZATION ARE URGED TO VOTE IN FAVOR OF THE PLAN AND TO RETURN THE BALLOT INCLUDED WITH THIS DISCLOSURE STATEMENT UPON COMPLETION IN THE ENVELOPE ADDRESSED TO:

WAUSON KING
ANABEL KING
52 SUGAR CREEK CENTER BLVD., SUITE 325
SUGAR LAND TEXAS 77478

NOT LATER THAN_____ , AT 5 :00. P.M. CENTRAL, TIME.

Dated: September 13, 2023                    WAUSON | KING


                                             _____
                                             Anabel King
                                             52 Sugar Creek Center Blvd., Suite 325
                                             Sugar Land, Texas 77478
                                             Tele. No. (281) 242-0303
                                             Fax No. (281) 242-0306

                                             Counsel for the Debtor,
                                             De La Reina Developments Corporation

## TABLE OF CONTENTS

I.      NOTICE TO HOLDERS OF CLAIMS ........................................................... 5

II.     GENERAL INFORMATION ABOUT THE DEBTOR ................................. 7

III.    DEBTOR'S CHAPTER 11 CASE ............................................................. 10

IV.     SUMMARY OF PLAN ............................................................................ 16

V.      VOTING PROCEDURES AND REQUIREMENTS.................................. 27

VI.     CONFIRMATION OF THE PLAN........................................................... 29

VII.    ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF PLAN ........ 34

VIII.   CONCLUSION........................................................................................ 34

**EXHIBITS**

**Exhibit A:**    Plan of Reorganization under Chapter 11 of the Bankruptcy Code for De La Reina Developments Corporation

**Exhibit 1:**    Liquidation Analysis

## DISCLOSURE STATEMENT WITH RESPECT TO
## PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE
## FOR DE LA REINA DEVELOPMENTS CORPORATION

De La Reina Developments Corporation., the Debtor and Debtor-in-Possession in the above referenced chapter 11 case ("Debtor"), hereby submits this Debtor's Disclosure Statement with Respect to its Plan of Reorganization Under Chapter 11 of the Bankruptcy Code for De La Reina Developments Corporation as conditionally approved on _____, 2023 (the "Disclosure Statement"), in connection with the solicitation of acceptances of the Plan of Reorganization Under Chapter 11 of the Bankruptcy Code for De La Reina Developments Corporation (the "Plan") that is attached hereto as **Exhibit A**.

### I.

### NOTICE TO HOLDERS OF CLAIMS

The purpose of this Disclosure Statement is to enable you, as the holder of a claim against the Debtor, to make an informed decision with respect to the Plan prior to exercising your right to accept or reject the Plan.

***Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.*** No solicitation of votes may be made except pursuant to this Disclosure Statement, and no person has been authorized to utilize any information concerning the Debtor or its business other than the information contained in this Disclosure Statement. You should not rely on any information relating to the Debtor and its estate, other than that contained herein.

The sources of the information in this Disclosure Statement are the Debtor and its President, Juan Luis Perez, tax returns of the Debtor, the books and records of the Debtor, and a liquidation analysis.

The proposed distributions under the Plan are discussed at pages 18 - 22 of this Disclosure Statement. The Holders of all Allowed Claims will be paid under the terms of the Plan.

### Purpose of This Document

This Disclosure Statement describes:

    a.  The Debtor and significant events leading up to the bankruptcy case,
    b.  How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the plan is confirmed),
    c.  Who can vote on or object to the Plan,
    d.  What factors the Bankruptcy Court will consider when deciding whether to confirm the Plan,

    e.   Why the Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation,

    f.   Source of the funds, and

    g.   The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

The United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court") held a hearing on_____, 2023, at _____o'clock ___.m. Central Standard Time in Courtroom 403, United States Courthouse, 515 Rusk Street, 4th Floor, Houston, Texas 77002, to consider conditional approval of the Disclosure Statement. At that hearing, the Bankruptcy Court conditionally approved the Disclosure Statement and set a hearing to consider final approval of the Disclosure Statement and confirmation of the Plan on _____, 2023, at ___:___ o'clock p.m. (the "Hearing"). _____, 2023, is fixed as the last day to file a written objection to the Disclosure Statement and Plan. If you file a written objection to the Disclosure Statement and/or Plan, you must also serve a copy of the written objection on counsel for the Debtor, Anabel King of Wauson ¦ King, and your written objection must be received by Ms. King on or before _____, 2023. You may send your written objection to Ms. King via hand delivery or mail at 52 Sugar Creek Center Blvd., Suite 325, Sugar Land, Texas 77478, via facsimile at (281) 242-0306, or via email at aking@w-klaw.com.

At the Hearing, the Bankruptcy Court will determine whether this Disclosure Statement contains information, of a kind and in sufficient detail, adequate to enable the holders of claims against the Debtor to make an informed judgment with respect to acceptance or rejection of the Plan. THE BANKRUPTCY COURT'S CONDITIONAL APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE EITHER A GUARANTEE OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN OR ENDORSEMENT OF THE PLAN BY THE BANKRUPTCY COURT.

You should read this Disclosure Statement in its entirety prior to voting on the Plan. No solicitation of votes may be made except pursuant to this Disclosure Statement, and no person has been authorized to utilize any information concerning the Debtor or his business other than the information contained in this Disclosure Statement. You should not rely on any information relating to the Debtor and its estate, other than that contained herein.

Objections to approval of the Disclosure Statement and to confirmation of the Plan are governed by Bankruptcy Rule 9014. UNLESS AN OBJECTION TO APPROVAL OF THE DISCLOSURE STATEMENT AND/OR TO CONFIRMATION OF THE PLAN IS TIMELY SERVED AND FILED IT WILL NOT BE CONSIDERED BY THE BANKRUPTCY COURT.

The Hearing may be adjourned from time to time by the Bankruptcy Court without further notice, except for an announcement made at Hearing or any adjournment thereof.

A ballot to be used for voting to accept or reject the plan together with postage paid return envelope. is enclosed with all copies of this Disclosure Statement.  BEFORE COMPLETING YOUR BALLOT, PLEASE READ CAREFULLY THE VOTING INSTRUCTION SHEET THAT ACCOMPANIES THE BALLOT.  As indicated above, the Bankruptcy Court has directed that, in order to be counted for voting purposes, ballots for the acceptance or rejection of the plan must be received by the Debtor's counsel served via fax, electronic mail, mail or hand delivery, and received by counsel for the Debtor on or before_____, at the following address(s):

Wauson | King
52 Sugar Creek Center Blvd., Suite 325
Sugar Land, Texas 77478
(281) 242-0303
Fax No.: (281) 242-0306
Email: aking@w-klaw.com

YOUR BALLOT WILL NOT BE COUNTED IF IT IS RECEIVED AT THE ABOVE ADDRESS/FAX NO./EMAIL ADDRESS AFTER _____, 2023.

## II.

## GENERAL INFORMATION ABOUT THE DEBTOR

### A. Description and History of the Debtor's Business and Events Leading up to Bankruptcy.

On November 10, 2011, De La Reina Developments Corporation was formed in Texas.  The entity was formed at the advice of counsel for estate planning purposes for Mr. Perez and Mrs. Rochin.  The shares in De La Reina were initially owned by Terminal Granelera de Veracruz, S.A. de C.V., also at the advice of counsel for estate planning purposes.  Mr. Juan Perez Soberon and his wife, Andrea Rochin were the shareholders of that entity.  On May 31, 2012, Mr. Perez and Mrs. Rochin made a $265,220.76 down payment towards the purchase of the Property.  Those funds were transferred to the title company through a foreign entity—at the advice of counsel.  De La Reina executed a promissory note in the name of Sierra Lending Group, LLC. The principal amount of the note is $650,000.00 secured by a deed of trust.  Mr. Perez and Mrs. Rochin personally guaranteed the loan.  There is a certificate of occupancy requiring De La Reina to occupy the Property.  The property is located at 134 E. Bracebridge Circle, Spring, Texas 77382, a true and correct picture of the Property is pasted herein below:



Subsequently, Mr. Perez and Mrs. Paez remodeled the Property and spent approximately $400,000 on those improvements. Mr. Perez was an employee of Scrap and Steel Terminals USA, Inc. and operated that corporation. As part of his compensation package, Scrap and Steel Terminals USA, Inc. made payments to Mr. Perez for the mortgage payments and then directly to Sierra Lending Group, LLC. Unfortunately, Scrap and Steel Terminals USA, Inc. lost its lease and was unable to locate alternative location with access to the ship channel.

On August 27, 2014, Cal-Ixa Aggregates, LLC was formed. It is a Texas limited liability company. Cal-Ixa Aggregates, LLC is a distribution company which trades services, logistics, aggregates, consumables, etc. Cal-Ixa Aggregates, LLC trades with foreign entities, including foreign entities in Mexico. After Scrap and Steel Terminals USA, Inc. was unable to continue operations, Mr. Perez is a member of Cal-Ixa Aggregates, LLC and began working for Cal-Ixa. As with Scrap and Steel, as part of his compensation package, Cal-Ixa made payments to Mr. Perez for the mortgage payments and or directly to Sierra Lending Group, LLC.

In 2019, Mexico's GDP contracted almost 6% and around 5% in 2020. Mexico's economy is highly dependence on the United States economy. Cal-Ixa Aggregates, LLC commenced experiencing cash flow issues as a result of loss of income/transactions due to market conditions, primarily, economic crisis in Mexico. Cal-Ixa Aggregates, LLC is Mr. Perez and Mrs. Rochin's primary source of income to make the monthly mortgage payments and all expenses and costs incurred to maintain and repair the Property. Seeing that the financial situation was not improving, Mr. Perez contacted Sierra Lending Group, LLC, its mortgage servicer, to explain his financial constraints. Sierra Lending Group, LLC assured Mr. Perez not to worry about the loan but later posted the Property for foreclosure sale to take place on May 7, 2019.

On April 30, 2019, De La Reina sought a temporary restraining order against Members Choice Credit Union and the State District Court entered a Temporary Restraining Order prohibiting the foreclosure sale. The relief was based primarily on accounting errors in the payment history and the notice of default and subsequently disputed fees and charges. Attempts to gather funds to cure the default failed and De La Reina challenged, *inter alia*, certain fees and sought a second TRO. The State Court denied the application for second TRO.

On August 9, 2019, De La Reina files its first bankruptcy, *pro se*, Cause No. 19-34366 in the Southern District of Texas. De La Reina subsequently retained a bankruptcy attorney to dismiss that

case which was dismissed at the request of the U.S. Trustee. De La Reina did not oppose the dismissal. On October 16, 2019, Cal-Ixa paid $93,052.01 to Sierra Lending Group, LLC

In 2020, the Mexican economy continued to contract, and the impacts of Covid 2019 adversely affected Cal-Ixa's sales and operations and the mortgage loan went into default again.

On January 4, 2021, De La Reina filed its second voluntary bankruptcy proceeding. Case No. 21-30012-H5-11 also in the Southern District of Texas. The same bankruptcy attorney represented De La Reina in that proceeding. On February 4, 2021, Sierra Lending and De La Reina filed an agreed motion to reinstate the mortgage. On March 3, 2021, the U.S. Trustee and De La Reina filed and agreed motion to dismiss. On March 31, 2021, Sierra Lending moved for relief from stay but on April 15, 2021. Sierra Lending withdrew its motion as moot in light of subsequent payments. On April 8, 2021, Cal-Ixa Aggregates, LLC paid $57,200.00 to Sierra Lending Group, LLC. On April 17, 2021, De La Reina filed the Motion for agreed dismissal and on April 19, 2021 the agreed dismissal order is signed.

The market conditions continued to fluctuate through 2022. The December 2022 mortgage payment was not made. Sierra Lending Gorup issued a Notice of Default dated January 5, 2023 and demanded $18,279.10 for the December 2022, January 2023, and the 2023 February payments and $500 as an "NOD Fee" presumable for the notice of default. Mr. Perez was unable to obtain funds to cure the default.

Sierra Lending served a *Notice of Maturity/Accelerations of Texas Recourse Loan and Enclosing Notice of Substitute Trustee's Sale* dated February 8, 2023. Mr. Perez contacted Sierra Lending and Sierra Lending's foreclosure attorneys and negotiated an extension agreement. Pursuant to that agreement, on March 6, 2023 at 1:55 p.m., Cal-Ixa Aggregates, LLC paid $30,000 to Sierra Lending Group, LLC and the entire loan was to be paid in full by May 31, 2023. Mr. Perez was unable to pay the loan in full by May 31, 2023. Sierra Lending issued a *Notice of Maturity/Acceleration of Texas Recourse Loan and Enclosing Notice of Substitute Trustee's Sale* dated June 12, 2023.

On June 15, 2023, De La Reina contacted attorney Anabel King and met with Ms. King on June 21, 2023. On June 27, 2023, De La Reina engaged Ms. King to file a bankruptcy proceeding. On June 30, 2023, Deputy Vasquez visited the Property to serve a writ of execution on behalf of Medtrade, Inc. Deputy Vasquez makes contact with Mrs. Andrea Rochin at the Property and requests Mrs. Rochin to have Mr. Perez contact him. De La Reina's counsel notified Deputy Vasquez of the pending bankruptcy petition which was to be filed. This is the first time De La Reina learned of any default judgment by Medtrade, Inc. against De Le Reina.

On July 3, 2023, the Debtor filed its voluntary Chapter 11 petition in the United States Bankruptcy Court for the Southern District of Texas, Houston Division in order to rehabilitate and or restructure its debt with Sierra Lending Group, LLC and arrange a plan to repay its allowed, general unsecured creditors and any disputed, contingent and or unliquidated claims which are subsequently determined to be valid and allowable via Court Order (State Court or Bankruptcy Court) or as agreed by the parties subject to Bankruptcy Court approval.

**B.  Insiders of the Debtor.**

Insiders of the Debtor are as follows:

        1.  Juan Luis Perez, is the Debtor's corporate representative, President and Director and 70% shareholder.
        2.  Andrea Rochin, is the Debtor's Secretary, Director and 30% shareholder.

**C.  Management of the Debtor Before and During the Bankruptcy.**

    Juan Luis Perez has managed De La Reina Developments Corporation before this bankruptcy proceeding.  Mr. Perez is the corporate representative of De La Reina Developments Corporation in this Proceeding.   Juan Luis Perez has kept and maintained the books and records of the Debtor.

**III.**

**DEBTOR'S CHAPTER 11 CASE**

**A.  General Case History.**

    a.  On July 3, 2023, the Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code.  The Debtor filed an application to employ Wauson | King as its general bankruptcy counsel, and the Bankruptcy Court approved that application. The Debtor also filed an application to employ Wauson King as its special litigation counsel to pursue the Debtor's claims against Medtrade, Inc. and evaluate other claims. Finally, the Debtor also filed an application to employ Alberto Levet at its tax preparer.  Those applications have not yet been ruled on.

    b.  On July 3, 2023, the Debtor filed its Schedules and Statement of Financial Affairs and its List of Equity Security Holders.

    c.  On July 13, 2023, the Debtor filed its Application to Employ Wauson King as General Bankruptcy Counsel to represent the Debtor in this proceeding.  On June 15, 2023, the Bankruptcy Court granted that application approving the employment.

    d.  On August 3, 2023, the Debtor attended its Initial Debtor's Interview with the United States Trustee's office.

    e.  On August 8, 2023, the Debtor attended its meeting of creditors which was concluded that same day.

    f.  Medtrade, Inc. filed a motion to convert this proceeding to a Chapter 7 or dismiss the case to a Chapter 7 proceeding.  Sierra Lending Group, LLC and Promexa filed a joinder to that Motion. An evidentiary hearing was held on August 21, 2023. The

Court denied that motion, and set deadlines to file certain pleadings and filings and chided a status conference on September 18, 2023 at 9:00 a.m.

g.  On September 13, 2023, the Debtor is filing its Application to Employ Wauson King as Special Litigation Counsel to represent the Debtor in its claims and causes of action pending in De La Reina Developments Corporation v. Medtrade, Inc.; In the 270th Harris County District, Texas.

h.  On September 13, 2023, the Debtor is filing its Application to Alberto Levet as professional to finalize and file tax returns for De La Reina Developments Corporation.

i.  On September 13, 2023, the Debtor is filing objections to the proofs of claim of Medtrade, Inc. and Promexa and Motion to Determine debt owed to Sierra Lending.

## B.  Claims.

### Administrative Claims

Sylvia Mayer and Wauson King have administrative claims.  Sylvia Mayer has been paid by Juan Luis Perez and the fees sought are subject to Bankruptcy Court approval.  The fees sought are $1,576.00. Wauson King anticipates $75,000 in attorney's fees less $18,000 retainer and an additional $20,000 paid on August 8, 2023 by Cal-Ixa Aggregates, LLC.

### Sierra Lending Group, LLC

The Debtor listed Sierra Lending Group, LLC with a secured claim on Schedule D of its schedules.  The claim is based on a promissory note in the original principal amount of $650,000, secured by a deed of trust covering the real property and improvements located at 134 E. Bracebridge Circle, Spring, Texas.  Finally, Juan Luis Perez Soberon and Andrea Rochin signed guaranty agreements guarantying the debt.  The Debtor is required to be the occupant of the Property and make the Property its principal residence per the loan documents.

Sierra Lending Group, LLC has not yet filed a proof of claim. Sierra Lending Group LLC represented to the Debtor that $534,077.21 were owed through June 7, 2023—applying the $30,000 payment Mr. Perez made to Sierra Lending Group, LLC on March 3, 2023, plus a $89.22 per diem.  The Debtor anticipates objecting to the claim in part.  The Debtor disputes certain fees that Sierra Lending Group, LLC charged as unauthorized by the loan documents and or excessive and unenforceable penalties.  A motion to determine the debt owed to Sierra Lending Group, LLC is being filed.

### Montgomery County Tax Office & Montgomery County MUD No. 60

The Debtor listed Montgomery County Tax Office and Montgomery County MUD No. 60 as a secured claim for ad valorem taxes.  These creditors filed proofs of claim and will retain their liens on the Properties. The ad valorem taxes will be promptly paid by January 31, 2024 and each year thereafter subject to any and all applicable penalties and interests.

## DISPUTED, CONTINGENT CLAIMS:

### Promexa

Promexa entered into an agreement with Cal-Ixa Aggregates, LLC and obtained a summary judgment against Cal-Ixa Aggregates LLC in State Court Montgomery County. Cal-Ixa sought leave to assert alter ego claims against De La Reina and subsequently withdrew its motion after this bankruptcy proceeding was filed. Promexa filed a proof of claim for $616,000 and rests on a summary judgment obtained against Cal-Ixa Aggregates, LLC. Further, an objection to that proof of claim is being filed. Promexa is listed as a contingent, disputed and unliquidated debt.

### Medtrade Inc.

The Debtor listed Medtrade, Inc. with a disputed, contingent unsecured claim on Schedule E/F of its bankruptcy schedules. Medtrade, Inc. filed a proof of claim for $677,026.96 asserting a default judgment against De La Reina. De La Reina filed a petition for bill of review in State Court, and is filing an objection to Medtrade, Inc's proof of claim. Below is a summary of Medtrade, Inc.'s connection with this case and the events leading up to the purported default judgment.

In May 2013, Medtrade, Inc. entered into a service agreement with Scrap Steel Terminals USA, LLC under which Scrap Steel Terminals USA, LLC agreed to provide services to Medtrade, Inc. A dispute arose of some alleged missing delivery and Medtrade Inc.'s failure to provide personnel, equipment, and software to account for its deliveries. The parties were required to attempt to reach a resolution and or submit their disputes through arbitration.

In December 2015, Medtrade Inc. sued Scrap Steel Terminals USA, LLC for breach of contract, negligence, common law fraud, and conversion arising out of the May 2013 service agreement. In May 2016, Medtrade amended its Original Petition and added Terminal Granelera de Veracruz, S.A. de CV, De La Reina Corporation, Scrap and Steel Trading Corporation, and Juan Luis Perez Soberon as defendants and added conspiracy as an additional cause of action. Medtrade, Inc. and Scrap Steel Terminals USA, LLC settled and the suit was subsequently abated. The abatement is lifted in October 2018.

In October 2018, Medtrade, Inc. filed its Second Amended Petition including breach of settlement agreement against Scrap Steel Terminals USA, LLC and Mr. Perez. No response was filed on behalf of Scrap Steel Terminals USA, LLC or Mr. Perez and the State Court entered a partial summary judgment *only* against Scrap Steel Terminals USA, LLC for $403,124.77 and $45,000 in attorney's fees. Medtrade, Inc. moved to sever that judgment and the judgment was severed.

In March 2019, Medtrade, Inc. filed its third amended petition and added Cal-Ixa Aggregates, LLC as a defendant and pleads alter ego and joint enterprise as an additional cause of action.

In March 2020, Medtrade, Inc. served its intent to take the following depositions: (a) corporate representatives of Cal-Ixa Aggregates, LLC; (b) the corporate representative of Scrap and Steel Terminals USA, LLC on March 26, 2020; and (c) Alicia Rochin Paez on March 24, 2020. Scrap and

Steel Terminals USA, LLC moved to quash the depositions on the grounds that Medtrade already recovered a final judgment against Scrap and steel Terminals USA, LLC. Scrap and Steel Trading Corporation, De La Reina, Mr. Perez, Cal-Ixa Aggregates, LLC and Alicia Rochin Perez filed a memorandum of law urging the Court that the suit cannot continue as to the remaining Defendants due to the one recovery rule citing *Stewart Title Guar. Co. v. Sterling*, 822 S.W. 2d 1, 7 (Tex. 1991) and Tex. Bus. Org. Code §§ 101.114 and 21.223 to illustrate the significantly narrow and limited circumstances under which an alter ego or joint enterprise can prevail. *SSP Partners v. Gladstrong Invest. (USA) Corp.*, 275 S.W.3d 444, 451-52 (Tex. 2008). Medtrade filed its own brief arguing that it should be allowed to proceed with the suit. The Court never ruled on the pending issues.

On May 6, 2022, Medtrade, Inc. moved to dismiss all claims against all Defendants, including De La Reina, without prejudice. That same day, May 6, 2023, Medtrade, Inc. filed an Original Petition against Scrap and Steel Trading Corporation, Terminal de Granelera de Veracruz, S.A. de CV, Cal-Ixa Aggregates, Juan Luis Perez, and De La Reina. The Clerk filed a return of mail as unclaimed. Medtrade filed a motion for substituted service. On August 23, 2022, the State Court entered an Order granting Motion for substituted services.

On October 4, 2022, process server, Mr. Shawn Morgan dba STM Process filed an Affidavit of Service in which Mr. Morgan testifies that Mr. Morgan affixed the citation, the Original Petition, and the Order on Substituted Service to the door of the Property. De Le Reina denies being served.

On November 4, 2022, Medtrade, Inc. files a motion for default judgment. No notice of hearing on the Motion for Default is served on De La Reina.

The District Court required evidence of proof of service of the notice of hearing on the motion for default. No evidence of proof of service on the notice of hearing on the Motion for Default is filed with the Court.

Despite not complying with the Court's Procedures, and although the alleged service did not comply with the Court's Order, Medtrade, Inc. obtained a default judgment against De La Reina on December 12, 2022. On April 5, 2023, Medtrade, Inc. requested an abstract of judgment. On May 12, 2023, Medtrade, Inc. recorded the abstract in the Montgomery County Real Property records against De La Reina and other entities in state court litigation suit.

Medtrade, Inc. obtained the judgment against De La Reina without complying with Court procedures or with the Court's Order for substituted service. The process server could not have posted the documents on Mr. Perez' front door because he would need to enter through the front gate which remains closed at all times. Further, the Property is entirely fenced in including the driveway. The gate remains closed and access is controlled by Mr. Perez and or his wife, Mrs. Rochin. A picture of the Property is pasted below:



On, May 22, 2023, after the deadline to appeal and or file a motion for new trial, Medtrade Inc. filed a request for Writ of Execution. June 22, 2023, Deputy Vasquez received Writ of Execution. On June 30, 2022, Deputy Vasquez visited the Property and contacted Mrs. Andrea Rochin at the Property and requested that Mr. Perez contact him.  In was then that De La Reina learned about the default judgment against De La Reina.

Medtrade, Inc. filed a secured proof of claim against the Property. The Debtor is filing an objection to that proof of claim.  Debtor also filed an Original Petition for Bill of Review in State Court which has been transferred to the 270th Harris County District Court and for which citations have been requested.

**C.** **Current and Historical Financial Conditions.**

The Debtor hold title to real property and improvements.  The Property has increased in value over time due to the location of the Property, *among other things*, and the shareholders' improvements, maintenance, and repairs of and to the Property.

**D.** **Assets of the Debtor.**

The Debtor's principal asset is its real property and improvements on the property in the form of a residence in Spring, Texas.

The Debtor has claims and causes of action against Medtrade Inc., including an Equitable Petition for Bill of Review, fraudulent conveyance and preference action and other potential claims and causes of action being evaluated.

The Debtor has potential alter ego claims which are being evaluated.  The Debtor also has potential claims and or causes of action against Promexa, Mr. Lee Crawley, and Sierra Lending Group, LLC.

**Debtor's Reserved Causes of Action for Prosecution:  The Debtor has the following causes of action that the Debtor reserves for prosecution:**

a.  The Debtor has a litigation claim that it is currently prosecuting.  That litigation is pending in state court and is styled *De La Reina Developments Corporation v. Medtrade, Inc.* Cause No. 202359616-7 in the 270th Judicial District Court of Harris County, Texas. The Debtor filed an *Original Petition for Bill of Review*. Citations have been requested and the case was transferred from the 151st District Court to the 270th District Court. Special proposed litigation counsel, Anabel King, expects the case to require protracted litigation and possibly a full trial. There are certainly risks inherent in all litigation and there is no assurance of any recovery. Nevertheless, the Debtor is confident that it will set aside the default judgment entered against it and that it will prevail at trial and that Medtrade, Inc. will recover nothing from De La Reina.  The Debtor may have additional causes of action and or claims against Medtrade, Inc. being evaluated.

b.  The Debtor also has potential alter ego claims being asserted by Promexa and Medtrade, Inc.

c. The Debtor also has potential claims and causes of action against Sierra Lending Group, LLC related to the loan documents and other actions and or omissions.

d.  The Debtor has potential claims and causes of action against Lee Crawley.

e.  The Debtor has claims, remedies, and or causes of action against Promexa in connection with the lawsuit and the proof of claim filed including those arising from Promexa not being registered to conduct business in the State of Texas with the Texas Secretary of State.

f.  The Debtor has contingent claims and causes of action which are being evaluated and preserved.

Cal-Ixa Aggregates, LLC and or Juan Luis Perez and Andrea Rochin will fund the litigation described herein in.  The source of the funds will be from operations/profits from Cal-Ixa Aggregates, LLC and or from Juan Luis Perez and his compensation from Cal-Ixa Aggregates, LLC.

### E.  **Executory Contracts and Unexpired Leases.**

The Debtor was a party to one executory contract and one unexpired lease of residential real property.  The lease is a month-to-month lease with Juan Luis Perez Soberon and Andrea Rochin.  The lease is a month-to-month verbal agreement.  The loan documents securing the Property require the Debtor to occupy the Property.  The Debtor believes, in exercising its best business judgment, that assuming the lease is in the best interests of the estate and asks this Court to approve assumption of the lease agreement.

The Debtor reserves the right to move separately to assume the executory contract and will be assuming the unexpired lease in its Plan.

IV.

## SUMMARY OF THE PLAN OF REORGANIZATION
## AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A. <u>What is the Purpose of the Plan?</u>

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether each class of claims or equity interests is impaired or unimpaired.  If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

### B. <u>Impaired Claims and Equity Interests and Their Treatment.</u>

The Debtor's Plan provides for five (5) classes of claims and interests.  There is a class for administrative claims, the secured claim of Sierra Lending Group, LLC, a class for the secured claim of Montgomery County Tax Office and Montgomery County MUD No. 60, a class for the general unsecured allowed claims, and a class for the holders of equity interests in the Debtor. This Plan also provides for the payment of administrative, priority claims.  The classification of those classes and their treatment is detailed below.

The Debtor anticipates having fees due to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6). Those fees will be paid on the Effective Date.  The Debtor also anticipates having certain other administrative expense claims of its professionals, such as Wauson | King, general counsel to the Debtor, and as proposed special litigation counsel to the Debtor.  Those administrative expense claims will be paid in cash, in full when allowed, or if allowed then on the Effective Date, or as agreed to between the Debtor and third parties securing payment of fees— Cal-Ixa Aggregates, LLC and guaranteed by Juan Luis Perez and Andrea Rochin.

### 1. <u>Classification of Claims.</u>

The classes of claims that will be treated in the Plan are as follows:

<u>Class 1</u>.  Administrative Claim of Wauson King and Sylvia Mayer (which has been paid) and whose fees are subject to Bankruptcy Court approval.

<u>Class 2</u>. This class consists of the claim of Sierra Lending Group, LLC securing the Property for a sum as determined by the Court and or as agreed by the Parties.

<u>Class 3</u>. This class consists of taxing authorities asserting tax liens on the Property, which shall be promptly paid and whose liens will be retained on the Property.

<u>Class 4</u>.  This class consists of all allowed, general nonpriority, valid, non-disputed, non-contingent unsecured claims.

<u>Class 5</u>. This class consists of equity holders of the Debtor.

### 2. Treatment of Claims by Class.

#### a. Non-Classified Claims.

Claims and interests shall be treated as follows under this Plan. Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has *not* placed the following claims in any class. One category of such claims are fees owed to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6). All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid. To the extent there are such fees due and owing on the confirmation date, such fees will be paid in cash in full on the Effective Date. Other U.S. Trustee Fees incurred after the confirmation date will be paid timely until the case is closed. Another form of administrative expenses are costs or expenses of administering the Debtor's chapter 11 case, which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment. Holders of these other forms of allowed administrative expense claims shall be paid in cash, in full, on the Effective Date, or as agreed between the Debtor and such holder of administrative expense claim.

**b.** **Classified Claims.**

The Debtor will treat the holders of allowed claims and interests in Classes 1 – 5 as follows:

**Class 1:** All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), "gap" period claims in an involuntary case under § 507(a)(3), and priority tax claims under § 507(a)(8)). Juan Luis Perez and Andrea Rochin and or Cal-Ixa Aggregates LLC will pay the following administrative claims within 14 days immediately following entry of a final, non-appealable order approving the fees:

    a.  Subchapter V Trustee: Sylvia Mayer estimated $1,576.50. Those fees were paid by Mr. Juan Luis Perez, individually.

    b.  Wauson King: estimated $75,000 less $18,000 retainer and a $20,000 payment made by Cal-Ixa Aggregates, LLC on August 8, 2023.

De la Reina's case will not be closed until all administrative claims are paid in full. Wauson King will file a fee application for the fees incurred in connection with this Chapter 11 proceeding and state court litigation. Juan Luis Perez and Andrea Rochin and or Cal-Ixa Aggregates LLC will pay for fees incurred by Wauson King. Nothing in this Plan waives and or modified any rights, benefits, and or claims by Wauson King against Cal-Ixa Aggregates, LLC, pursuant to the engagement agreement and against Juan Luis Perez and Andrea Rochin pursuant the personal guarantees executed by each in favor of Wauson King.

**Class 2** Sierra Lending Group, LLC is deemed an allowed as a secured claim in the amount of $549,057.05 as of September 18, 2023 and will be paid that amount and or as determined by the Court and or as agreed by De La Reina and Sierra Lending Group, LLC. That sum will be paid § 506 of the Code and will be paid per entry of a final, non-appealable order confirming the Plan and or entry of a final, non-appealable order approving determining the sums due to Sierra Lending Group, LLC.

**Class 3**     Montgomery County asserts a tax lien on the Property in the sum of $18,119.25. Its tax lien attaches to the Property effective January 1, 2023 for ad valorem taxes owed on the Property on January 31, 2024.   Montgomery County will retain its lien on the Property and will be paid directly by Juan Luis Perez Soberon and or Andrea Rochin and or Cal-Ixa Aggregates, LLC when the ad valorem taxes become due and payable but not later than January 31, 2024th together will any statutory penalties and or interest.

Montgomery County MUD No. 60 asserts a tax lien on the Property in the sum of $1,686.50. Its tax lien attaches to the Property effective January 1, 2023 for ad valorem taxes owed on the Property on January 31, 2024.  Montgomery County will retain its lien on the Property and will be paid directly by Juan Luis Perez Soberon and or Andrea Rochin and or Cal-Ixa Aggregates, LLC when the ad valorem taxes become due and payable but not later than January 31, 2024th together will any statutory penalties and or interest

Class 3 secured claim holders will retain their tax liens on the Property pursuant to their filed proof of claims.

**Class 4**     All non-priority unsecured claims allowed under § 502 of the Code, although none are expected to be filed.

2.06    **Class 5**     Equity interests of De la Reina are the following:

a. Juan Luis Perez, 70% of shares

b. Andrea Rochin Perez, 30% of shares

**C.    Implementation of the Plan.**

On the Effective Date, the Reorganized Debtor will execute all other documents necessary to the implementation of the Plan and the Order of Confirmation.   All property of the estate shall be transferred to the Reorganized Debtor.

**E.  Other Provisions of the Plan.**

**1.  Provisions Governing Distribution.**

(a) <u>Requirement for Allowance of Claims and Equity Interests</u>.   No payment or other distribution will be made on account of any claim or Equity Interest that is not "allowed".   The plan defines an "Allowed Claim" as: (i) a Claim which has been allowed by Final Order of the Court; (ii) a Claim timely filed with the Clerk of the Court or scheduled as other than unliquidated, disputed or contingent by the Debtor in its Schedules and Statement of Financial Affairs or Amended Schedules and Amended Statement of Affairs filed with the Court, as to which Claim no objection to the allowance thereof has been timely filed, or as to which Claim either an objection to the Claim or an application to amend the Schedules with respect to such Claim has resulted in the allowance of the Claim, in whole or in part, by Final Order of the Court; (iii) a Claim whose amount is established as a provision of the Plan; or (iv) a right to payment from the Estate Property for compensation or reimbursement as approved by the Court by Final Order.   The Plan defines "Final Order" as an order or judgment, which is no longer subject to appeal or review.   Any order or judgment which is pending a timely filed motion to correct or amend the order or judgment pursuant to F.R.B.P. 7052 or 9023 or which is pending a timely filed notice of appeal pursuant to F.R.B.P. 8002 shall not be considered a Final Order until after all such motions and appeals are exhausted. The bar date deadline for filing proofs of claim is not yet set, but when it is set it will serve as the Bar Date.

(b) <u>Date and Delivery of Distribution</u>.  Distributions of cash under the plan will be made by the Newly Reorganized Debtor beginning on the Effective Date.

(c) <u>Means of Cash Payment and Time Bar</u>.  Cash payments to be made by the Reorganized Debtor pursuant to the Plan will be made in U.S. funds by check drawn on a domestic bank.   Checks issued in respect of Allowed Claims will be null and void if not cashed within 90 days of the date of issuance thereof.   Any claim in respect of such a voided check must be made on or before the later of the first anniversary of the distribution date or 90 days after the date of issuance of such check. After such date, all claims in respect of void checks will be discharged and forever barred.

## 2.  <u>Provisions for Resolving Contested Claims</u>.

(a) <u>Filing Pre-Petition Claims</u>.  Creditors must have filed their proofs of claims with respect to pre-petition claims on or before the Bar Date, after which date any proof of claim filed will have no effect on the Plan and no right to participate with other creditors under the Plan.

(b) <u>Objection Deadline</u>. Except as otherwise set forth in the Plan or as otherwise extended or ordered by the Bankruptcy Court, all objections to pre-petition claims and/or post-petition administrative expense claims must be filed no later than one hundred twenty days (120) days after the Effective Date (unless such day is not a Business Day; in which case, such deadline will be the next Business Day thereafter unless extended by an order of the Bankruptcy Court). An objection to a Claim will be deemed properly served on the holder thereof if service is effected by any of the following methods: (a) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004; (b) to the extent counsel for a Claimant is unknown, by first-class mail, postage prepaid, on the signatory on the proof of Claim or other representative identified on the proof of Claim or any attachment thereto; or (c) by first-class mail, postage prepaid, on any counsel that has appeared on the behalf of the Claimant in the Bankruptcy Case.

(b) Notwithstanding any other provision of the Plan, the Holders of contested claims that are in dispute and pending allowance shall receive no payment or distribution until and unless this Court enters an order allowing such claim in a liquidated sum and any post-judgment motions and appeals with respect to such order are resolved and exhausted. Payment is then subject to the terms of the Plan.

(c) <u>Post-Confirmation Amendments to Proofs of Claims</u>. Except as otherwise provided in the Plan, following the Confirmation Date, a Claim may not be amended unless such amendment results in a decrease of the amount of the Claim, change in priority of the Claim to a lower priority under the Bankruptcy Code, or withdrawal of Claim. Any unauthorized amendment shall be deemed null, void, and of no force or effect.

(d) <u>No Distributions on Disputed Claims Pending Allowance</u>. No Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order and the Disputed Claim has become an Allowed Claim. The Reorganized Debtor may, in its sole discretion, withhold Distributions otherwise due hereunder to the holder of a Claim until the Objection Deadline to enable the Reorganized Debtor to file a timely objection thereto. When a Disputed Claim becomes an Allowed Claim, the Reorganized Debtor shall make Distributions with respect to such Allowed Claim, without interest (except as otherwise provided in this Plan), net of any setoff and/or any required withholding of applicable taxes.

(e) <u>Disputed, Contingent Claims</u>.

> i. Promexa claims an unsecured claim in the amount of $616,000 which De La Reina intends to file an objection. Promexa asserts a claim against De La Reina on the ground that "money provided for business transaction of alter ego of Debtor." There is no adjudication and or determination finding and or holding that De La Reina is liable to Promexa. De La Reina will pay Promexa in full whatever sums are determined to be owed to Promexa whether by entry of a final, nonappealable order and or as agreed by the parties—De La Reina and Promexa.

> ii. Medtrade, Inc. claims a secured claim in the amount of $677,026.96 against the Property.

(f) <u>Distributions After Allowance</u>. Unless otherwise provided in the Plan, as promptly as practicable after the date on which a Disputed Claim becomes undisputed, non-contingent, liquidated and Allowed, and in no event later than thirty (30) days after the Disputed Claim becomes an Allowed Claim, the Reorganized Debtor will distribute to the Claimant, monthly payments. Those payments will be paid over a period of 24 months immediately following that determination, adjudication and or agreement by the parties. If the payments are not timely made the Debtor shall receive a notice of default with 10 days to cure. The Reorganized Debtor shall be entitled to a maximum of two notices of default provide the first notice of default is cured. If the default is not cured, the Reorganized Debtor will within 30 days post the Property for sale and notify the creditor(s) of those efforts. The Reorganized Debtor will be authorized to retain a realtor to assist the Debtor in selling the Property and valid claim holders will be paid in full at closing and funding of sale of the Property, which is defined herein as 134 E. Bracebridge Circle, Spring, Tx 77382.

The source of the funds for the distribution will be Juan Luis Perez and or Andrea Rochin and or Cal-Ixa Aggregates, LLC (from its operations).

(g) After all Disputed Claims have been resolved and all such Claims that become Allowed Claims have been paid in full, any remaining property in the Distribution Reserve Account will be distributed the Reorganized Debtor.

(h) Allowance of Claims Subject to Bankruptcy Code Section 502(d). Allowance of Claims will, in all respects, be subject to the provisions of Section 502(d) of the Bankruptcy Code, except as provided by a Final Order of the Bankruptcy Court or a settlement among the relevant parties.

3. **<u>Miscellaneous Provisions</u>.**

(a) <u>Recognition of Guarantee and Subordination Rights</u>. The classification and manner of satisfying all claims under this plan takes into consideration (a) the existence of guarantees by the Debtor of obligations of other persons, (b) the fact that the Debtor may be a joint obligor with another person or persons with respect to the same obligation, and (c) any contention by holders of claims against the Debtor that the Claims of other holders are subordinated by contract or otherwise to their Claims. All Claims against the Debtor are based upon the express requirement and terms of this Plan that any such guarantees, subordination claims or joint obligations shall be discharged in the manner provided in this Plan, and which holders of such Claims shall be entitled to only one distribution with respect to any obligation of the Debtor.  All Claims against the Debtor, and all rights and claims between or among holders of Claims relating in any manner whatsoever to Claims against the Debtor, based upon any claimed subordination rights or rights to avoid payments or transfers of property pursuant to any provision of the Bankruptcy Code or other applicable law, shall be deemed satisfied by the distributions under this Plan to holders of claims hereunder and shall not be subject to levy, garnishment, attachment, or like legal process by any holder of a Claim by reason of any claim subordination rights or otherwise, except as otherwise provided herein, so that each holder of a Claim shall have and receive the benefits of the distributions in the manner set forth in this plan.

(b) **<u>Injunction and Stay of Proceedings.</u>   Unless otherwise specified in this Plan, all Entities who have held, hold, or may hold Claims against the Debtor are permanently enjoined on and after the Effective Date for so long as the Debtor complies with the terms of the Plan and makes all Plan payments timely from: (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim against the Debtor; (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtor and with respect to any such Claim; (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor and or against property of the Debtor with respect to any such Claim; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor or against property of the Debtor and with respect to any such Claim; (e) conducting any form of discovery from the Debtor with respect to any such Claim; and/or (f) harassing the Debtor. Unless otherwise provided in this Plan, all injunctions or stays set forth in §§ 105 and 362 of the Bankruptcy Code (11 U.S.C. §§ 105 and 362) shall remain in full force and effect until the Effective Date of the Plan rather than the Confirmation Date. However, this shall not be construed as a limitation of the permanent injunctions provided for in the Plan.**

(c) <u>Property of the Estate/Payments</u>. All of the assets of the Debtor shall be transferred to the Reorganized Debtor on the Effective Date and shall cease to constitute property of the estate. The payments required under the Plan are the only payments to be made to the Holders of Allowed Claims, and no others, in satisfaction of such Allowed Claims.

(d) <u>U.S. Trustee Requirements</u>. Until the Effective Date, the Debtor shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6) as provided for in the Plan. After the Effective Date, the Reorganized Debtor shall file with the Court and serve upon the United States Trustee on behalf of the Debtor a quarterly financial report for each quarter or portion thereof that the case remains open in a format prescribed by the United States Trustee and provided to the Debtor by the United States Trustee. Cal-Ixa Aggregates, LLC, Juan Luis Perez, and or Andrea Rochin will pay for these fees.

**4. Consummation of the Plan.**

(a) <u>Retention of Jurisdiction</u>. The plan provides that the Court shall retain exclusive jurisdiction over the Debtor's chapter 11 case to determine, among other things, all disputes relating to claims, adversary proceedings, all issues presented by, arising or stated in the plan, and all matters pending on the Effective Date.

(b) <u>Modification of the Plan</u>. The Debtor may amend or modify the plan before or after confirmation in accordance with the provisions of § 1127 of the Bankruptcy Code.

(c) <u>Revocation of the Plan</u>. The Debtor may revoke and withdraw the plan at any time prior to confirmation.

**F. Federal Income Tax Consequences of the Plan on the Debtor and the Creditors.**

**1. Introduction.**

The following discussion summarizes certain significant U.S. federal income tax consequences of the transactions that are described herein and in the Plan that affect holders of Claims or Interests and the Debtor. This summary is based upon the Internal Revenue Code of 1986, as amended (the "Tax Code"), the Treasury Department regulations promulgated thereunder (the "Treasury Regulations"), judicial authority and current administrative rulings and practice now in effect. These authorities are all subject to change at any time by legislative, judicial or administrative action, and such change may be applied retroactively in a manner that could adversely affect holders of Claims or Interests and the Debtor. The federal income tax consequences to any particular holder of a Claim or Interests may be affected by matters not

discussed below. For example, the impact of the Plan under any foreign, state or local law is not discussed. Further, this summary generally does not address the tax consequences to Claim holders who may have acquired their Claims from the initial holders nor does it address the tax considerations applicable to Claim holders or Interest holders that may be subject to special tax rules such as financial institutions, insurance companies, dealers in securities or currencies, tax-exempt organizations or taxpayers subject to the alternative minimum tax. To the extent that the summary of payments to Claimholders in this section conflicts with other parts of this Disclosure Statement or the Plan, the discussion in such other parts of the Disclosure Statement or the Plan shall govern.

NO RULING WILL BE SOUGHT FROM THE INTERNAL REVENUE SERVICE (the "IRS"), AND NO OPINION OF COUNSEL HAS BEEN OR WILL BE SOUGHT, WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN. THE DISCUSSION SET FORTH BELOW IS FOR GENERAL INFORMATION ONLY. THIS DESCRIPTION DOES NOT COVER ALL ASPECTS OF FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO THE DEBTOR OR HOLDERS OF CLAIMS OR INTERESTS. EACH CLAIM AND INTEREST HOLDER IS URGED TO CONSULT WITH ITS OWN TAX ADVISER REGARDING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN.

### 2.   Federal Income Tax Consequences to Debtor.

Generally, a taxpayer recognizes cancellation of indebtedness ("COD") income upon satisfaction of its outstanding indebtedness for less than its adjusted issue price. The amount of COD income is, in general, the excess of (i) the adjusted issue price of the indebtedness satisfied, over (ii) the issue price of any new indebtedness issued by the taxpayer, the amount of cash and the fair market value of any other consideration (including stock of the taxpayer) given in exchange for the indebtedness satisfied. However, COD income is not included in gross income to a debtor if the discharge occurs in a Title 11 case or the discharge occurs when the debtor is insolvent. Rather the debtor generally must, after determining its tax for the taxable year of discharge, reduce its net operating losses ("NOL(s)") and any capital loss carryovers first and then, as of the first day of the next taxable year, reduce the tax basis of its assets by the amount of COD income excluded from gross income by this exception. The Debtor does not expect there to be any tax effect to the Debtor as a result of the Plan.

### 3.   Consequences to Holders of Claims.

The federal income tax consequences of the implementation of the Plan to a holder of a Claim will depend, among other things, upon the origin of the holder's Claim, when the holder's Claim becomes an Allowed Claim, when the holder receives payment in respect of such Claim, whether the holder reports income using the accrual or cash method of accounting, whether the holder has taken a bad debt deduction or worthless security deduction with respect to such Claim and whether the holder's Claim constitutes a "security" for federal income tax purposes. Generally, a holder of an Allowed Claim will realize gain or loss on the exchange under the Plan of its Allowed Claim for stock and other property (such as Cash and new debt instruments), in an amount equal to the difference between (i) the sum of the amount of any Cash, the issue price of any debt instrument, and the fair market value on the date of the exchange of any other property received

by the holder (other than any consideration attributable to a Claim for accrued but unpaid interest) and (ii) the adjusted basis of the Allowed Claim exchanged therefor (other than basis attributable to accrued but unpaid interest previously included in the holder's taxable income). The treatment of accrued but unpaid interest and amounts allocable thereto varies depending on the nature of the holder's claim and is discussed below.

Whether or not such realized gain or loss will be recognized (i.e., taken into account) for federal income tax purposes will depend in part upon whether such exchange qualifies as a recapitalization or other "reorganization" as defined in the Tax Code, which may in turn depend upon whether the Claim exchanged is classified as a "security" for federal income tax purposes. The term "security" is not defined in the Tax Code or in the Treasury Regulations. One of the most significant factors considered in determining whether a particular debt instrument is a security is the original term thereof. In general, the longer the term of an instrument, the greater the likelihood that it will be considered a security. As a general rule, a debt instrument having an original term of 10 years or more will be classified as a security, and a debt instrument having an original term of fewer than five years will not. Debt instruments having a term of at least five years but less than 10 years are likely to be treated as securities, but may not be, depending upon their resemblance to ordinary promissory notes, whether they are publicly traded, whether the instruments are secured, the financial condition of the debtor at the time the debt instruments are issued and other factors. Each holder of an Allowed Claim should consult his or her own tax advisor to determine whether his or her Allowed Claim constitutes a security for federal income tax purposes.

The Debtor intends to take the position that all payments in respect of Allowed Claims will be first allocated to the principal amount of the Allowed Claim, with any excess allocated to accrued unpaid interest. However, there is no assurance that such allocation would be respected by the IRS for federal income tax purposes. In general, to the extent any amount received by a holder of an Allowed Claim is received in satisfaction of accrued interest during its holding period, such amount will be taxable to the holder as interest income (if not previously included in the holder's gross income). Conversely, a holder generally will recognize a deductible loss to the extent any accrued interest claimed was previously included in gross income and is not paid in full. Each holder of an Allowed Claim is urged to consult its tax advisor regarding the allocation of consideration and deductibility of unpaid interest for tax purposes. A holder, who, under his accounting method, was not previously required to include in income, accrued but unpaid interest attributable to its existing Claims, and who exchanges its interest Claim for cash, or other property, pursuant to the Plan will be treated as receiving ordinary interest income to the extent of any consideration so received allocable to such interest, regardless of whether that holder realizes an overall gain or loss as a result of the exchange of its existing Claims.

Allowed Claims will be paid from the operating income of Cal-Ixa Aggregates, LLC and or Juan Luis Perez and or Andrea Rochin. A claimholder's tax basis in a Claim should generally equal the amount included in income as a result of the provision of goods or services to the debtor, except to the extent that a bad debt loss had previously been claimed. The gain or loss should be capital gain or loss under Section 1221 of the Tax Code to the extent that the Claim did not arise in the ordinary course of trade or business for services rendered or from the sale of inventory to the Debtor, in which case such gain or loss should generally be ordinary. Any capital gain or loss

recognized by a holder of a Claim should be long-term capital gain or loss with respect to Claims held for more than one year.

### 4. <u>Withholding and Reporting.</u>

The Reorganized Debtor will withhold all amounts required by law to be withheld and will comply with all applicable reporting requirements of the Tax Code. Under the Tax Code, interest, dividends and other "reportable payments" may under certain circumstances be subject to "backup withholding" at a rate equal to the fourth lowest rate of tax under Section 1(c) of the Tax Code. Backup withholding generally applies if the Holder (i) fails to furnish his social security number or other taxpayer identification number ("TIN"), (ii) furnishes an incorrect TIN, (iii) fails to report interest or dividends or (iv) under certain circumstances fails to provide a certified statement, signed under penalty of perjury, that the TIN provided is his correct number and the Holder is not subject to backup withholding. Your ballot contains a place to indicate your TIN.

AS INDICATED ABOVE, THE FOREGOING IS INTENDED TO BE A SUMMARY ONLY AND NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE FEDERAL, STATE AND LOCAL TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND, IN SOME CASES, UNCERTAIN. ACCORDINGLY, EACH HOLDER OF A CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT WITH HIS OR HER OWN TAX ADVISER REGARDING THE FEDERAL, STATE AND LOCAL TAX CONSEQUENCES OF THE PLAN WITH RESPECT TO THAT ENTITY.

### V.

### VOTING PROCEDURES AND REQUIREMENTS

### A. <u>Ballots and Voting Deadline.</u>

A ballot to be used for voting to accept or reject the plan together with postage paid return envelope, is enclosed with all copies of this Disclosure Statement. BEFORE COMPLETING YOUR BALLOT, PLEASE READ CAREFULLY THE VOTING INSTRUCTION SHEET THAT ACCOMPANIES THE BALLOT.

As indicated above, the Bankruptcy Court has directed that, in order to be counted for voting purposes, ballots for the acceptance or rejection of the plan must be received by the Debtor's counsel on or before _____, 2023, at the following address:

Wauson | King
52 Sugar Creek Center Blvd., Suite 325
Sugar Land, Texas 77478
Fax No.: (281) 242-0306
Email: aking@w-klaw.com

YOUR BALLOT WILL NOT BE COUNTED IF IT IS RECEIVED AT THE ABOVE ADDRESS AFTER _____, 2023.

### B. Parties in Interest Entitled to Vote.

Any holder of a claim against in the Debtor whose claim or interest is impaired under the plan is entitled to accept or reject the plan if either (i) its claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent or unliquidated, or (ii) it has filed a timely proof of claim, on or before the last date set by the Bankruptcy Court for such filings, such date to be set by the Court, and the Debtor or Reorganized Debtor has not filed an objection to that proof of claim or (iii) the Debtor or Reorganized Debtor has agreed to the amount and treatment of such claim as provided under the Plan. Any claim which the Debtor has listed as disputed, contingent, or unliquidated or as to which an objection has been filed is not entitled to vote, unless the Bankruptcy Court, upon application of the holder whose claim has been so listed or objected to, temporarily allows the claim in an amount that it deems proper for the purpose of accepting or rejecting the plan. A vote may be disregarded if the Bankruptcy Court determines that it was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code. IF YOU HAVE ANY QUESTIONS REGARDING THE PROCEDURES FOR VOTING ON THE PLAN, PLEASE CONTACT THE OFFICE OF THE DEBTOR'S COUNSEL.

Anabel King
Wauson King
52 Sugar Creek Center Blvd., Suite 325
Sugar Land, Texas 77478
Telephone No.: (282) 242-0303
Fax No.: (281) 242-0306
Email: aking@w-klaw.com

### C. Definition of Impairment.

A class of claims and equity interests is impaired under a plan of reorganization unless, as set forth in section 1124 of the Bankruptcy Code, with respect to each claim or equity interest of such class, the plan:

1. Leaves unaltered the legal, equitable, and contractual rights of the holder of such claim or interest.
2. Notwithstanding any contractual provision or applicable law that entitles the holder of the claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default:
    (a) cures any default that occurred before or after the commencement of the case under this title other than the default of the kind specified in section 365(b)(2) of the Bankruptcy Code;
    (b) reinstates the maturity of such claim or interest as such maturity existed before such default;
    (c) compensate the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and
    (d) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interests; or

3. Provides that, on the Effective Date of the plan, the holder of such claim or interest receives, on account of such claim or interest, cash equal to:

    (a) with respect to a claim, the allowed amount of such claim; or

    (b) with respect to an interest, if applicable, the greater of:

      (i) any fixed liquidation preference to which the terms of any security representing such interest entitle the holder of such interest; or

      (ii) any fixed price at which the Debtor, under the terms of the security, may redeem such security from such holder.

**D. Classes Impaired Under the Plan.**

No classes are impaired under the Debtor's Plan.

**E. Vote Required for Class Acceptance.**

The Bankruptcy Code defines acceptance of a plan by a class of claims as acceptance by holders of at least 2/3 in amount, and more than ½ in number, of the claims of that class that actually casts ballots for acceptance or rejection of the plan. Thus, class acceptance takes place only if 2/3 in amount and a majority in number of the holders of claims voting cast their ballots in favor of acceptance.

The Bankruptcy Code defines acceptance of a plan by a class of Equity Interests as acceptance by holders of at least 2/3 in amount of the Equity Interests of that class that actually cast ballots for acceptance or rejection of the plan. Thus, class acceptance takes place only if 2/3 in amount of the holders of Equity Interests voting casts their ballots in favor of acceptance.

### VI.

### CONFIRMATION OF THE PLAN

**A. Confirmation Hearing.**

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the plan. By order of the Bankruptcy Court, the Bankruptcy Court will consider final approval of the Disclosure Statement and confirmation of the Plan at the Hearing scheduled for _____, 2023, at _____ o'clock ___.m. (Houston Time) in Courtroom 403, United States Courthouse, 515 Rusk Street, 4th Floor, Houston, Texas. The confirmation may be adjourned from time to time by the Bankruptcy Court without further notice accept for an announcement made at the confirmation hearing or any adjournment thereof.

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of the plan. Any objection to confirmation of the plan must be made in writing and filed with the Bankruptcy Court and served via facsimile, mail or hand delivery, upon the Debtor, the United States Trustee, and those parties requesting notice, together with proof of service, on or before_____, 2023.

Objections to confirmation of the plan are governed by Bankruptcy Rule 9014.  UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED IT WILL NOT BE CONSIDERED BY THE BANKRUPTCY COURT.

## B.  <u>Requirements for Confirmation of the Plan</u>.

At the confirmation hearing the Bankruptcy Court shall determine whether the Bankruptcy Code's requirements for confirmation of the plan have been satisfied, in which event the Bankruptcy Court shall enter an order confirming the plan.  As set forth in Section 1129 of the Bankruptcy Code, these requirements are as follows:

1.  The plan complies with the applicable provisions of the Bankruptcy Code.

2.  The proponent of the plan complies with the applicable provisions of the Bankruptcy Code.

3.  The plan has been proposed in good faith and not by any means forbidden by law.

4.  Any payment made or to be made by the proponent, by the Debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in, or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the Court as reasonable.

5.  (a) (i)   the proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in a joint plan with the Debtor, or a successor to the Debtor under the plan; and
    (ii)  the appoint to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and
    (b) The proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized Debtor, in the nature of any compensation for such insider.

6.  Any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the Debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval.

7.  With respect to each class of impaired claims or Equity Interests:
    (a) Each holder of a claim or interest of such class:
       (i) has accepted the plan; or
       (ii) will receive or retain under the plan on account of such claim or interest property of the value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on such date; or
    (b) If section 1111 (b) (2) of the Bankruptcy Code applies to the claims of such class, the holder of the claim of such class will receive or retain under the plan on account of such claim property of a value, as of the Effective Date of the

plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

8. With respect to each class of claims or interests:

    (a) Such class has accepted the plan; or

    (b) Such class is not impaired under the plan;

9. Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that:

    (a) With respect to a claim of the kind specified in section 507(a)(2) or 507(a)(3) of the Bankruptcy Code, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

    (c) With respect to a class of claims of the kind specified in section 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of the Bankruptcy Code, each holder of the claim of such class will receive:

        (i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

        (ii) if such class has not accepted the plan, cash on the Effective Date of the plan equal to the allowed amount of such claim; and

    (d) With respect to a claim of the kind specified in section 507(a)(8) of the Bankruptcy Code, the holder of a claim will receive on account of such claim regular installment payments in cash of a total value, as of the Effective Date of the Plan, equal to the allowed amount of such claim, over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303, and in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b)).

10. If a class of claims is impaired under the plan, at least one class of claims that is impaired has accepted the plan, determined without including any acceptance of the plan by any insider.

11. Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the plan, unless such liquidation or reorganization is proposed to the plan.

12. All fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan.

13. The plan provides for the continuation after its effective date of payment of all retiree benefits, as that term is defined in section 1114 of this title, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114 of this title, at any time prior to confirmation of the plan, for the duration of the period the debtor has obligated itself to provide such benefits.

14. If the debtor is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, the debtor has paid all amounts payable under such order of such statute for such obligation that first become payable after the date of the filing of the petition.

15. All transfers of property of the plan shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust.

    (a) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

    (b) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

The Debtor believes that the plan satisfies all of the statutory requirements of chapter 11 of the Bankruptcy Code, that it has complied or will have complied with all of the requirements of Chapter 11, and that the proposal of the plan is made in good faith.

The Debtor believes that the holders of all claims impaired under the plan will receive payments or distributions under the plan having a present value as of the Effective Date in amounts not less than the amounts likely to be received by such holders if the Debtor were liquidated in a case under chapter 7 of the Bankruptcy Code. At the confirmation hearing, the Bankruptcy Court will determine whether holders of claims would receive greater distributions under the plan than they would receive in liquidation under chapter 7. A discussion of the Debtor's liquidation analysis is provided below.

The Debtor also believes that confirmation of the plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor or any successor to the Debtor under the plan. The payments to fund the plan will be from Cal-Ixa Aggregates LLC, Juan Luis Perez, and or Andrea Rochin.

## C. **Cramdown.**

In the event that any impaired class of claims or Equity Interests does not accept the plan, the Bankruptcy Court may still confirm the plan at the request of the Debtor if, as to each impaired class which has not accepted the plan, the plan "does not discriminate unfairly" and is "fair and

equitable." The plan of reorganization does not discriminate unfairly which in the meaning of the Bankruptcy Code if no class receives more than it is legally entitled to receive for its claims.

"Fair and equitable" has different meanings with respect to the treatment of secured and unsecured claims. As set forth in section 1129(b)(2) of the Bankruptcy Code, those meanings are as follows:

(1) With respect to a class of secured claims:

    (a) (i)  The plan provides that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the Debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

        (ii)  that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the Effective Date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

    (b) for the sale, subject to § 363 (k) of the Bankruptcy Code, of any property that is subject to the lien securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (a) and (b) of this subparagraph; or

    (c) for the realization by such holders of the indubitable equivalent of such claims.

(2) With respect to a class of unsecured claims:

    (a) the plan provides that each holder of a claim of such class receive or retain on the account of such claim property of a value, as of the Effective Date of the plan, equal to the allowed amount of such claim; or

    (b) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.

(3) with respect to a class of interests:

    (a) the plan provides that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the Effective Date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price which such holder is entitled, or the value of such interest; or

    (b) the holder of any interest that is junior to the interest of such class will not receive or retain under the plan on account of such junior interests any property.

In the event that one or more classes of impaired claims rejects the plan, the Bankruptcy Court will determine at the confirmation hearing whether the plan is fair and equitable with respect to and does not discriminate unfairly against any rejecting impaired class of claims.

## VII.

### ALTERNATIVES TO CONFIRMATION
### AND CONSUMMATION OF PLAN

The Debtor believes that the Plan is feasible and will not lead to further reorganization or liquidation. The Plan proposes to pay 100% of the Allowed Claims, including any Allowed Unsecured Claims.

## VIII.

### CONCLUSION

All holders of claims against the Debtor are urged to vote to accept the plan and to evidence such acceptance by returning their ballots so that they will be received by the deadline for voting which is _____, 2023.

**De La Reina Developments Corporation**

By: Juan Luis Perez Soberon (Sep 13, 2023 13:20 CDT)

Juan Luis Perez Soberon, President

**WAUSON KING**


By: _____ /s/ Anabel King _____

**Anabel King**
State Bar No. 24067659
Fed. ID. No. 1012318
aking@w-klaw.com
52 Sugar Creek Center Blvd., Suite 325
Sugar Land, Texas 77478
(281) 242-0303 (Telephone)
(281) 242-0306 (Facsimile)

Counsel for
De la Reina Developments Corporation

# 2023-09-13 1220 pm AK Disclosure Statement - V8

**Final Audit Report**                                          2023-09-13

| | |
|---|---|
| Created: | 2023-09-13 |
| By: | Lidia Bulnes (lbulnes@w-klaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAGO_oUGSzRatunuOVR81r6OCyJSa0Jrbb |

## "2023-09-13 1220 pm AK Disclosure Statement - V8" History

Document created by Lidia Bulnes (lbulnes@w-klaw.com)
2023-09-13 - 6:16:48 PM GMT

Document emailed to jlperez3380@gmail.com for signature
2023-09-13 - 6:17:17 PM GMT

Email viewed by jlperez3380@gmail.com
2023-09-13 - 6:19:55 PM GMT

Signer jlperez3380@gmail.com entered name at signing as Juan Luis Perez Soberon
2023-09-13 - 6:20:22 PM GMT

Document e-signed by Juan Luis Perez Soberon (jlperez3380@gmail.com)
Signature Date: 2023-09-13 - 6:20:24 PM GMT - Time Source: server

Agreement completed.
2023-09-13 - 6:20:24 PM GMT

**Adobe Acrobat Sign**